**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron.marron@gmail.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**Counsel for Plaintiff and the Proposed Class**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT REID, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, and MCNEIL NUTRITIONALS,<br><br>Defendants. | Case No: 3:11-cv-01310 L BLM<br>Pleading Type: Class Action<br><br>**DECLARATION OF JACK FITZGERALD IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY**<br><br>Judge: Hon. Barbara L. Major<br>Date: January 26, 2012<br>Time: 10:00 a.m.<br>Courtroom: A |

*Reid v. Johnson & Johnson, et al.*, Case No. 3:11-cv-01310 L BLM
DECLARATION OF JACK FITZGERALD

I, Jack Fitzgerald, declare:

1. I am a member in good standing of the State Bars of California and New York; and of the United States District Courts for the Northern, Central, and Southern Districts of California and the Southern and Eastern Districts of New York; and of the United States Court of Appeals for the Ninth Circuit. I make this Declaration in support of Plaintiff's Opposition to Defendants' Motion for Protective Order to Stay Discovery.

2. Plaintiff served his first set of discovery requests on August 31, 2011, following the Rule 26(f) conference of counsel. *See* Kaplan Decl., Dkt. No. 31-2, Exs. A-B.

3. On September 9, 2011, Defendants requested that we withdraw the discovery. Attached hereto as Exhibit 1 is a true and correct copy of a letter from Mollie Benedict, attorney for Defendants, to Gregory S. Weston and Ronald A. Marron, attorneys for Plaintiff, dated September 9, 2011.

4. We responded, advising that we would not withdraw the discovery, but that we were amenable to narrowing the requests in a mutually agreeable fashion. Attached hereto as Exhibit 2 is a true and correct copy of a letter from Jack Fitzgerald, attorney for Plaintiff, to Mollie Benedict, dated September 14, 2011.

5. On September 20, 2011, my partner Gregory Weston and I participated in a meet-and-confer conference call with Defendants' counsel, Matthew Kaplan, in which we proposed phased discovery in order to avoid discovery motion practice so early in the case. The following day we sent Defendants a more specific proposal in writing. Attached hereto as Exhibit 3 is a true and correct copy of a letter from Gregory S. Weston to Matthew Kaplan dated September 21, 2011.

6. Following that letter, on September 26, 2011, I participated in another conference call with Mr. Kaplan in which we further clarified and discussed the proposed agreement. Shortly thereafter, Mr. Kaplan sent a letter summarizing the parties' phased discovery agreement. Attached hereto as Exhibit 4 is a true and correct copy of a letter from Mr. Kaplan to Jack Fitzgerald dated October 3, 2011.

7. On October 5, we sent Mr. Kaplan a short letter clarifying that

> The purpose of our agreement to withdraw a large majority of our written discovery pending class certification, as well as agree to limit depositions to a fraction of what the federal rules provide for, is to avoid taking these issues to the Court in a contested motion for a protective order. Your client's forbearance from filing a motion for a protective order limiting discovery is the consideration for this.

8. Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the letter from Gregory S. Weston to Mr. Kaplan, dated October 5, 2011.

9. Accordingly, the statement in Mr. Kaplan's declaration that "the parties reached an agreement for phased discovery" whereby "Plaintiff was free to pursue additional discovery and McNeil was free to seek a protective order to stay discovery pending the court's ruling," Kaplan Decl. ¶ 6, is mistaken (and makes no sense). If the parties were free to pursue full discovery (Plaintiff) or seek a discovery stay (Defendant), then they had no agreement. Any such agreement would be illusory, with no consideration exchanged. Similarly, Plaintiff would not have agreed to limit its discovery while Defendants retained the right to seek a stay of all discovery.

10. Defendants' counsel responded on October 6, 2011. Attached hereto as <u>Exhibit 6</u> is a true and correct copy of a letter from Mr. Kaplan to Gregory S. Weston, dated October 6, 2011. Although this letter asserts, once again, that McNeil retained the right to seek a discovery stay, this was not our understanding.

11. At all times, Plaintiff acted in accordance with his understanding of the phased discovery agreement by refraining from serving any discovery other than that specifically agreed-upon by the parties. In addition, following this agreement, I had several more phone calls with Mr. Kaplan in which he sought various extensions to respond to the agreed-upon "Phase I" discovery, which I granted conditional upon Defendants' promise to begin producing documents on a rolling basis.

12. Like Plaintiff, for three months following the phased discovery agreement, Defendants acted accordingly, refraining from filing any motion for a stay and periodically promising the production of documents and information that Defendants represented they were collecting and reviewing.

13. Notwithstanding such promises, however, Defendants repeatedly dragged their feet. For example, while I originally forwarded Defendants a draft protective order on September 14 (*see* Ex. 2

2

hereto), and despite that such agreements are routine, and despite multiple follow-up inquiries, Defendants took 5 weeks to review the document. During this time they refused to produce documents. When Defendants' counsel finally did send a redlined protective order and we approved it shortly thereafter, counsel then represented it could not be filed until its client had approved the agreement. Attached hereto as Exhibit 7 is a true and correct copy of an email chain discussing these happenings. Incidentally, Defendants refused to do any of the three things requested in my October 29 email.

14. Attached hereto as Exhibit 8 is a true and correct copy of a letter from Mr. Kaplan to Gregory S. Weston, Jack Fitzgerald, and Ronald A. Marron dated October 26, 2011, in which Defendant McNeil Nutritionals, LLC states that the documents referenced in its responses to Plaintiff's First Set of Requests for Production "will be produced upon the Court's entry of a mutually acceptable protective order governing the production and use of confidential information."

15. On November 22, 2011, an associate of my firm, Courtland Creekmore, spoke with Defendants' counsel, Mollie Benedict, who represented, among other things, that (a) Defendants anticipated making a large document production and would begin by producing labels likely after Thanksgiving; (b) that Defendants would be able to produce documents within 2-3 weeks after their Motion to Clarify the Court's November 14, 2011 Protective Order (Dkt. No. 29) was resolved, which was resolved on December 1, 2011 (Dkt. No. 30); and that (c) Defendants objected to requests seeking documents showing the amount and percentage of Benecol units manufactured in California as burdensome, and that such requests were more properly the subject of less burdensome interrogatories, the response to which would show manufacture of Benecol in California. Mr. Creekmore communicated this to me in an email created shortly after his conversation with Ms. Benedict.

16. Despite the parties' September agreement to phase discovery, and despite our agreeing to several extensions of Defendants' responses premised on their production of responsive documents, and despite Defendants' representations that they had begun to gather responsive documents and would produce them within 3 weeks after the court "clarified" the protective order on December 1, 2011, and despite Defendants' invitation to serve interrogatories seeking information

1  about the manufacture of Benecol in California to obviate the need to produce documents on this
2  topic, to date Defendant has produced only 34 pages of labels and a two-page document indicating
3  the dates that such labels were in use.

4       17.    Prompted by Defendants' invitation to obtain information about the manufacture of
5  Benecol in California by serving interrogatories, on December 9, 2011, we served a Second Set of
6  Interrogatories comprised of three interrogatories narrowly aimed at seeking this information, as well
7  as the first date(s) Benecol was marketed in the United States and the identity of Defendants'
8  employees with knowledge of the at-issue labeling. *See* Kaplan Decl., Dkt. No. 31-2, Ex. E (Dkt. No.
9  31-7). On the same date, we served a Notice of Deposition pursuant to Rule 30(b)(6), consistent with
10 the parties' phased discovery agreement. *See id.* at Ex. F (Dkt. No. 31-8); *see also* Ex. 4 hereto, at 2
11 (letter from Defendants acknowledging Plaintiffs' right under agreement to notice up to 2 depositions
12 after December 1).

13      18.    On December 13, we received a letter from Defendants' counsel asking that we
14 withdraw the interrogatories and 30(b)(6) notice. A true and correct copy of that letter is attached
15 hereto as Exhibit 9.

16      19.    The following day, we sent a letter to Defendants' counsel stating that we would not
17 withdraw the requests, but would meet and confer to narrow them. Attached hereto as Exhibit 10 is a
18 true and correct copy of a letter from Courtland Creekmore to Mr, Kaplan, dated December 14, 2011.

19      20.    On December 19, 2011, Defendants' counsel contacted Mr. Creekmore by telephone and
20 advised that, notwithstanding the phased discovery agreement, multiple extensions received, promises
21 to produce a variety of documents and information, and indications that they were actively collecting
22 such documents and information, that they would be filing the instant Stay Motion, and requesting an
23 extension of the time to respond to the 30(b)(6) notice and Second Set of Interrogatories until late
24 February, i.e., after its motion was heard. Mr. Courtland provided no definitive response, instead
25 advising that he would need to confer with others in the firm.

26      21.    On December 23, I participated in a conference call with Defendants' counsel in which
27 we discussed the instant motion. Counsel again requested an extension until late February. Because it
28 was unclear, I specifically asked whether this was an attempt to moot the instant motion, i.e., if we

provided the requested extension, whether Defendants would agree not to file the motion. Counsel indicated that, regardless of our response, it intended to file the motion. Thus, I do not believe the statement in Mr. Kaplan's declaration, at paragraph 14, that Defendants made "an attempt to resolve this discovery dispute, but were unable to reach an agreement" is accurate—even if we had agreed to the extension, they would have filed the motion, and offered no compromise in which they would not seek the stay.

22. Later that day, Defendants' counsel sent a letter again requesting the stay. A true and correct copy of that December 23, 2011 letter is attached hereto as <u>Exhibit 11</u>. Before I could respond, Defendants filed the Stay Motion, further indicating that they had not "attempt[ed] to resolve" the issue of the stay they now seek.

23. On December 28, I responded to Defendants' letter, reiterating our disappointment in Defendants' discovery behavior thus far and its apparent repudiation of our phased discovery agreement. *See* Ex. 7 hereto. Notwithstanding, I offered a compromise whereby we would agree to extend Defendants' discovery responses if they simply did what they had previously agreed to do by producing the documents they had already agreed to produce and were actively collecting on or before January 26, 2012. Attached hereto as <u>Exhibit 12</u> is a true and correct copy of a letter from Jack Fitzgerald to Mr. Kaplan, dated December 28, 2011.

24. Defendants refused this invitation. A true and correct copy of the December 29, 2011 email in which Defendants declined to accept this compromise is attached hereto as <u>Exhibit 13</u>.

25. Had we known Defendants would seek a stay notwithstanding the phased discovery agreement, which required that we withdraw substantial portions of discovery, we would not have entered into the agreement but would have preferred having the issue of discovery decided immediately.

26. Despite the extensive exchange of correspondence on discovery, Defendants did not attach a single letter to their Stay Motion.[1]

---

[1] As part of the discovery agreement, Johnson & Johnson represented to Plaintiff that it is simply a holding company with no involvement in the marketing or manufacturing of Benecol. Based on that representation, Plaintiff agreed to refrain from serving discovery on Johnson & Johnson, and to dismiss the company without prejudice upon the receipt of a satisfactory declaration to this effect. *See*

5

*Reid v. Johnson & Johnson, et al.*, Case No. 3:11-cv-01310 L BLM
DECLARATION OF JACK FITZGERALD

1  I declare under penalty of perjury of the laws of the United States that the foregoing is true and
2  correct.

3  Executed on January 12, 2012, in Santa Clara, California.
4

5                                              /s/ Jack Fitzgerald
6                                              Jack Fitzgerald

7

8  Dated: January 12, 2012                    Respectfully Submitted,
9
                                               /s/Gregory S. Weston
10
                                               **THE WESTON FIRM**
11                                             GREGORY S. WESTON
                                               JACK FITZGERALD
12                                             MELANIE PERSINGER
                                               COURTLAND CREEKMORE
13                                             1405 Morena Blvd, Suite 102
14                                             San Diego, CA 92110
                                               Telephone:    619 798 2006
15                                             Facsimile:    480 247 4553

16

17

18

19

20

21

22

23

24  Ex. 3 hereto. Thereafter, however, Johnson & Johnson moved to dismiss a "copycat" lawsuit brought in the District of New Jersey, styled *Young v. Johnson & Johnson*, No. 3:11-cv-4580 (D.N.J., filed
25  August 6, 2011), for the fraudulent advertising of Benecol (unlike this case, McNeil is not a party in the *Young* action). However, not once in its Motion or Reply did Johnson & Johnson assert that it is a
26  holding company with no involvement in marketing Benecol. *See Young* Dkt. Nos. 12, 18. Johnson & Johnson's failure in this respect calls into serious question the veracity of its representation in this
27  case. Accordingly, Plaintiff no longer intends to dismiss the company, but will seek discovery from Johnson & Johnson, including depositions, documents and interrogatories, to determine the true
28  nature of its involvement in the alleged unlawful conduct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
3636 4th Avenue, Suite 202
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

**Counsel for Plaintiff and the Proposed Class**